UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHAWN RIGSBY,<br><br>    Plaintiff,<br><br>    v.<br><br>DUSTY LOVING, et al.,<br><br>    Defendants. | CAUSE NO. 3:23-CV-268-JD-MGG |

OPINION AND ORDER

Shawn Rigsby, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Rigsby alleges that, around 9:45 p.m. on November 24, 2022, he told Officer Andre Bey that he was being targeted for an attack and he was requesting protective custody. Officer Bey placed Rigsby in the day room and gave him a paper to fill out to request protective custody. Rigsby returned the form to Officer Bey. Officer Bey then unlocked the doors to the bed area without first securing Rigsby. Rigsby was immediately surrounded by inmates who spat on Rigsby and touched him in a "rude

and insolent manner." ECF 1 at 3. Officer Bey watched the encounter and allegedly did nothing to intervene.

When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). It is unclear what Officer Bey knew about the threat and it cannot be plausibly inferred that he had information regarding a specific, credible, and imminent risk of serious harm. Furthermore, Rigsby says he was touched in a rude and insolent manner and spat upon, but he does not provide details regarding the assault and he has not described any physical injury. *See* 42 U.S.C.A. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]"). Therefore, he cannot proceed on this claim.

Once an offender is under an attack, an officer cannot just stand by and do nothing. *See Schillinger v. Kiley*, 954 F.3d 990, 994-95 (7th Cir. 2020); *see also Borello v. Allison*, 446 F.3d 742, 748-49 (7th Cir. 2006) (noting Eighth Amendment violation can occur where prison official "did not respond to actual violence between inmates"). On the other hand, "correctional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene with a due regard for their safety[.]" *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (quotation marks omitted). Here, Rigsby says that Officer Bey did not make any efforts to protect him once the attack was underway. But again Rigsby has not described the manner in which he was attacked in any detail or indicated that he suffered any physical injury. Without more, it cannot be plausibly inferred that Officer Bey was deliberately indifferent to his safety. Therefore, Rigsby will not be permitted to proceed against Officer Bey for failing to intervene once the attack was underway.

Rigsby entered the officer's station for refuge. Officer Bey ordered Rigsby to leave. Rigsby tried to sit down in an adjoining room, but Officer Bey grabbed Rigsby and threw him out of the officer's station, on to the dayroom floor. Officer Bey then stood Rigsby up, patted him down, handcuffed him, and called for backup. Rigsby was charged with resisting and found guilty.[1]

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). The "core

---

[1] Rigsby does not indicate what sanctions, if any, were imposed.

requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the constitution. *Graham v. Conner*, 490 U.S. 386, 396 (1989), *quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied* 414 U.S. 1033 (1973). The complaint does not permit a plausible inference that the force used was excessive, and Rigsby therefore will not be permitted to proceed on this claim.

After this incident, Rigsby was escorted to a holding cell in the industrial complex. During the transfer, his property, valued at approximately $100.00, was stolen. Rigsby has not identified any defendant who is responsible for the loss of his property. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Furthermore, the Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." But, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's

4

action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Thus, these allegations do not state a claim.

Sometime after midnight, John Doe #1 escorted Rigsby from the industrial complex to 4-dorm. When they arrived on 4-dorm, John Doe #1 loudly announced to everyone in the vicinity that "there is no check-in over here on the GSC side" and if Rigsby had any more problems where he had to come back to the dorm, he was "going to beat Rigsby's ass." ECF 1 at 4. Rigsby followed Officer Matthew Lemerond into the 4-dorm dayroom and explained that John Doe #1 had just announced that Rigsby was a check-in and put a target on his back. He again asked for protective custody. Officer Lemerond told Rigsby to have a seat and he made a call. Many inmates approached and made threatening or derogatory comments, and Officer Lemerond, who was within earshot, allegedly ignored them. Around 5:00 a.m., Officer Lemerond told Rigsby to take his property back to the bed area. Rigsby explained that he could not do that because he was afraid. He again asked for protective custody. He went to the day room and was promptly assaulted. He was knocked off his feet and his nose bled from one of the blows. Rigsby has alleged facts from which it can be plausibly inferred

5

that John Doe #1 was deliberately indifferent to his safety by labeling him a check-in and Officer Lemerond was deliberately indifferent to his safety by sending him into the dorm after learning that John Doe #1 had labeled Rigsby as a check-in and inmates had threatened him in response to John Doe #1's statement.

Sgt. Dusty Lovings and Sgt. Jaylin (or Jaelin or Jalynn) Jones[2] escorted Rigsby out of 4-dorm. He was ordered to strip down and placed in a holding cell. While Sgt. Jones watched, Sgt. Lovings screamed at Rigsby for causing him to leave work late. He then struck Rigsby with his fists several times in the face and head, knocked him to the ground, and hit him on the back. The assault lasted two to four minutes, and Sgt. Jones allegedly watched without intervening. Rigsby was left on the floor without any medical assistance. These allegations state a claim against Sgt. Lovings for using excessive force and a claim against Sgt. Jones for failing to intervene in that use of excessive force.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Rigsby may also proceed against Sgt. Lovings and Sgt. Jones for deliberate indifference to medical needs following the use of force.

---

[2] Rigsby offered three possible spellings of Sgt. Jones' first name.

Later that morning, Rigsby was ordered to get up, but he explained that he could not get up due to his injuries. Lt. Antonio Santos and John Doe #2 grabbed him by the hair and throat, snatched him off the floor, and drug him to the nurse's station. Rigsby begged Nurse Eva Orvis for help. Lt. Santos told him to shut up or he would go "back upstairs to let them finish the job." ECF 1 at 7. Nurse Orvis checked his vital signs but provided no further care for his injuries.

Rigsby was taken back to a holding cell. Lt. Santos returned later with a protective custody form and told Rigsby exactly what to write. Lt. Santos allegedly threatened to send Rigsby back upstairs if he did not cooperate. At Lt. Santos' direction, Rigsby blamed someone named Cross, who Rigsby does not know, for his injuries instead of the Sgt. Lovings. He pleaded with John Doe #3 to get him medical help, but his requests were ignored. That afternoon or evening, Rigsby was taken to C dorm, where he had access to a telephone. He called a friend who had previously worked for the Indiana Department of Correction and told him what happened and that he needed medical care. His friend made some calls, and the next evening Rigsby was taken to the medical complex to be assessed. On Monday, X-rays were taken. They showed three fractures to his jaw and an orbital fracture. Rigsby was taken to the emergency room, where three broken ribs were discovered. His injuries required surgery. Given the severity of Rigsby's injuries, it can be plausibly inferred that both Nurse Orvis and John Doe #3 were deliberately indifferent to his serious medical needs.

For these reasons, the court:

(1) GRANTS Shawn Rigsby leave to proceed against John Doe #1 in his individual capacity for compensatory and punitive damages for deliberate indifference to his safety by labeling him a check-in in front of other offenders on November 25, 2022, in violation of the Eighth Amendment;

(2) GRANTS Shawn Rigsby leave to proceed against Correctional Officer Matthew Lemerond in his individual capacity for compensatory and punitive damages for deliberately indifferent to his safety by sending him into the dorm after witnessing inmates threaten him following John Doe #1's labeling of Rigsby a check-in on November 25, 2022, in violation of the Eighth Amendment;

(3) GRANTS Shawn Rigsby leave to proceed against Sgt. Dusty Lovings in his individual capacity for compensatory and punitive damages for using excessive force against him on November 25, 2022, in violation of the Eighth Amendment;

(4) GRANTS Shawn Rigsby leave to proceed against Sgt. Jaylin (or Jaelin or Jalynn) Jones in her individual capacity for compensatory and punitive damages for failing to intervene in Sgt. Lovings' alleged use of excessive force, in violation of the Eighth Amendment;

(5) GRANTS Shawn Rigsby leave to proceed against Sgt. Lovings, Sgt. Jaylin (or Jaelin or Jalynn) Jones, Nurse Eva Orvis, and John Doe #3 in their individual capacities for compensatory and punitive damages for deliberate indifference to medical needs following Sgt. Lovings' alleged use of excessive force on November 25, 2022, in violation of the Eighth Amendment;

(6) DIRECTS the clerk to add the Warden of the Westville Correctional Facility in his official capacity as a defendant only for the purpose of identifying Correctional Officer John Doe #1 and Correctional Officer John Doe #3;

(7) DISMISSES all other claims;

(8) DISMISSES Lt. Antonio Santos, Correctional Officer Andre Bey, and John Doe #2;

(9) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Correctional Officer Matthew Lemerond, Sgt. Dusty Loving, Sgt. Jaylin (or Jaelin or Jalynn) Jones, and the Warden of the Westville Correctional Facility at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(10) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nurse Eva Orvis at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 1);

(11) WAIVES the Warden of Westville Correctional Facility's obligation to file an answer to the complaint;

(12) ORDERS the Warden of Westville Correctional Facility to appear and identify Correctional Officer John Doe #1 and Correctional Officer John Doe #3, as described in the complaint and this order, by or before **November 3, 2023**, or show cause why he is unable to do so;

(13) GRANTS Robert Lee Wayne Whitlock until **December 1, 2023**, to amend his complaint to name the previously unknown correctional officers identified by the Warden of the Westville Correctional Facility;

(14) ORDERS the Indiana Department of Correction and Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(15) ORDERS, under 42 U.S.C. § 1997e(g)(2), Correctional Officer Matthew Lemerond, Sgt. Dusty Loving, Sgt. Jaylin (or Jaelin or Jalynn) Jones, and Nurse Eva Orvis to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 4, 2023

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT