UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHAWN RIGSBY, <br><br> Plaintiff, <br><br> v. <br><br> DUSTY LOVING, et al., <br><br> Defendants. | CAUSE NO. 3:23-CV-268-JD-MGG |

OPINION AND ORDER

Shawn Rigsby filed an amended complaint without the benefit of counsel, although he has since obtained counsel. ECF 43; ECF 45. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Rigsby alleges that, around 9:45 p.m. on November 24, 2022, he told Officer Andre Bey[1] that he was being targeted for an attack and he was requesting protective

---

[1] Andrew Bey was named as a defendant in Rigsby's original complaint, but he is not named as a defendant in the current complaint. ECF 1; ECF 43. The court's previous screening order found that Rigsby had not stated a claim against Andrew Bey (ECF 10), and the facts concerning Rigsby's interactions with Bey are provided only for background purposes.

custody. Officer Bey placed Rigsby in the day room and gave him a paper to fill out to request protective custody. Rigsby returned the form to Officer Bey. Officer Bey then unlocked the doors to the bed area without first securing Rigsby. Rigsby was immediately surrounded by inmates who pushed and poked Rigsby. One inmate spat on Rigsby. Officer Bey watched the encounter without intervening. Rigsby entered the officer's station for refuge. Officer Bey ordered Rigsby to leave. Rigsby tried to sit down in an adjoining room, but Officer Bey grabbed Rigsby and threw him out of the officer's station, on to the dayroom floor. Officer Bey then stood Rigsby up, patted him down, handcuffed him, and called for backup.

After this incident, Rigsby was escorted to a holding cell in the industrial complex.[2] Sometime near midnight on Thursday November 24, 2022, or shortly after midnight on November 25, 2022, Officer Steve Morales, (previously identified as John Doe #1) escorted Rigsby from the industrial complex to 4-dorm. When they arrived on 4-dorm, Officer Steve Morales loudly announced to everyone in the vicinity that "there is no check-in over here on the GSC side" and if Rigsby had any more problems where he had to come back to the dorm, he would "beat Rigsby's ass." ECF 3 at 5. Rigsby followed Officer Matthew Lemerond into the 4-dorm dayroom and explained that the officer (now identified as Officer Steve Morales) had just announced that Rigsby was a check-in and put a target on his back. He again asked for protective custody. Officer Lemerond told Rigsby to have a seat and he made a call. Many inmates approached and

---

[2] During the transfer, his property, valued at approximately $100.00, was stolen. As previously explained (ECF 10 at 4-5), these allegations do not state a claim.

made threatening or derogatory comments, and Officer Lemerond, who was within earshot, allegedly ignored them. Around 5:00 a.m., Officer Lemerond told Rigsby to take his property back to the bed area. Rigsby explained that he could not do that because he was afraid. He again asked for protective custody. He went to the day room and was promptly assaulted. He was knocked off his feet and his nose bled from one of the blows.

When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Rigsby has alleged facts from which it can be plausibly inferred that Officer Steve Morales was deliberately indifferent to Rigsby's safety by labeling him a check-in and Officer Lemerond was deliberately indifferent to his safety by sending him into the dorm after learning that Officer Steve Morales had labeled Rigsby as a check-in and inmates had threatened him in response to Officer Steve Morales's statement.

3

Sgt. Dusty Loving and Sgt. Jaylin (or Jaelin or Jalynn) Jones[3] escorted Rigsby out of 4-dorm. He was ordered to strip down and placed in a holding cell. While Sgt. Jones watched, Sgt. Loving screamed at Rigsby for causing him to leave work late. He then struck Rigsby with his fists several times in the face and head, knocked him to the ground, and hit him on the back. The assault lasted two to four minutes, and Sgt. Jones allegedly watched without intervening. Rigsby was left on the floor without any medical assistance.

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the constitution. *Graham v. Conner*, 490 U.S. 386, 396 (1989), *quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied* 414 U.S. 1033 (1973). "[O]fficers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v.*

---

[3] Rigsby offered three possible spellings of Sgt. Jones' first name.

*Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). These allegations state a claim against Sgt. Loving for using excessive force and a claim against Sgt. Jones for failing to intervene in that use of excessive force.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Rigsby may also proceed against Sgt. Loving and Sgt. Jones for deliberate indifference to medical needs following the use of force.

Later that morning, Rigsby was ordered to get up, but he explained that he could not get up due to his injuries. Lt. Antonio Santos[4] and another officer grabbed him by the hair and throat, snatched him off the floor, and drug him to a holding cell near the nurse's station. Rigsby begged Nurse Eva Orvis for help. Lt. Santos told him to shut up or he would go "back upstairs to let them finish the job." ECF 43 at 11. Nurse Orvis checked his vital signs but provided no further care for his injuries.

Rigsby was taken back to a holding cell. Lt. Santos returned later with a protective custody form and told Rigsby exactly what to write. Lt. Santos allegedly threatened to send Rigsby back upstairs if he did not cooperate. At Lt. Santos' direction,

---

[4] Lt. Antonio Santos was not named as a defendant in the amended complaint. ECF 43.

Rigsby blamed someone named Cross, who Rigsby does not know, for his injuries instead of Sgt. Loving.

He pleaded with an officer to get him medical help, but his requests were ignored. Rigsby initially named this officer as John Doe #3, but the Warden of the Westville Correctional Center has now indicated that this individual is Officer Michal Dombrowski, Officer Alex McGowen, or Sergeant Oscar Parrish. He received no help from the officer.

That afternoon or evening, Rigsby was taken to C dorm, where he had access to a telephone. He called a friend who had previously worked for the Indiana Department of Correction and told him what happened and that he needed medical care. His friend made some calls, and the next evening Rigsby was taken to the medical complex to be assessed. On Monday, X-rays were taken. They showed three fractures to his jaw and an orbital fracture. Rigsby was taken to the emergency room, where three broken ribs were discovered. His injuries required surgery. Given the severity of Rigsby's injuries, it can be plausibly inferred that both Nurse Orvis and the individual previously identified as John Doe #3 (Officer Michal Dombrowski, Officer Alex McGowen, or Sergeant Oscar Parrish) were deliberately indifferent to his serious medical needs.

For these reasons, the court:

(1) GRANTS Shawn Rigsby leave to proceed against Steve Morales (previously identified as John Doe #1) in his individual capacity for compensatory and punitive damages for deliberate indifference to his safety by labeling him a check-in in front of other offenders on November 25, 2022, in violation of the Eighth Amendment;

(2) GRANTS Shawn Rigsby leave to proceed against Correctional Officer Matthew Lemerond in his individual capacity for compensatory and punitive damages for being deliberately indifferent to his safety by sending him into the dorm after witnessing inmates threaten him following Steve Morales's labeling of Rigsby a check-in on November 25, 2022, in violation of the Eighth Amendment;

(3) GRANTS Shawn Rigsby leave to proceed against Sgt. Dusty Loving in his individual capacity for compensatory and punitive damages for using excessive force against him on November 25, 2022, in violation of the Eighth Amendment;

(4) GRANTS Shawn Rigsby leave to proceed against Sgt. Jaylin (or Jaelin or Jaynn) Jones in her individual capacity for compensatory and punitive damages for failing to intervene in Sgt. Loving's alleged use of excessive force, in violation of the Eighth Amendment;

(5) GRANTS Shawn Rigsby leave to proceed against Sgt. Loving, Sgt. Jaylin (or Jaelin or Jalynn) Jones, Nurse Eva Orvis, Alex McGowen, Michal Dombroski, and Sergeant Oscar Parrish **(the Court trusts that discovery will identify the appropriate party – originally identified as "John Doe #3" - and that counsel will dismiss the remaining two defendants)** in their individual capacities for compensatory and punitive damages for deliberate indifference to medical needs following Sgt. Loving's alleged use of excessive force on November 25, 2022, in violation of the Eighth Amendment;

(6) DISMISSES all other claims;

7

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Steve Morales, Alex McGowen, Michal Dombroski, and Sergeant Oscar Parrish at the Indiana Department of Correction, with a copy of this order and the amended complaint (ECF 43);

(8) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(9) ORDERS, under 42 U.S.C. § 1997e(g)(2), Correctional Officer Matthew Lemerond, Sgt. Dusty Loving, Sgt. Jaylin (or Jaelin or Jalynn) Jones, Nurse Eva Orvis, Steve Morales, Alex McGowen, Michal Dombroski, and Sergeant Oscar Parrish to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 8, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT